**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION**

In re:

**MARIA ANGELA MACAPAGAL,**

      **DEBTOR.**

                            **CHAPTER 7**

                            **CASE NO. 15-15762-TJC**

**BANK OF AMERICA, N.A.,**

      **MOVANT,**

**vs.**

**MARIA ANGELA MACAPAGAL
and LAURA J. MARGULIES, TRUSTEE,**

      **RESPONDENTS.**

**MOTION FOR RELIEF FROM THE AUTOMATIC STAY**
**(REAL PROPERTY LOCATED AT 19750 TEAKWOOD CIR UNIT 56, GERMANTOWN, MD 20874-1097)**

      Bank of America, N.A. ("Movant") hereby moves this Court, pursuant to 11 U.S.C. § 362, for relief from the automatic stay with respect to certain real property of the Debtor having an address of 19750 Teakwood Cir Unit 56, Germantown, MD 20874-1097 (the "Property"), for all purposes allowed by the Note (defined below), the Deed of Trust (defined below), and applicable law, including but not limited to the right to foreclose.  In further support of this Motion, Movant respectfully states:

      1.      A petition under Chapter 7 of the United States Bankruptcy Code was filed with respect to the Debtor on April 22, 2015.

      2.      The Debtor has executed and delivered or is otherwise obligated with respect to that certain promissory note in the original principal amount of $254,896.00 (the "Note").  A copy of the Note is attached hereto as <u>Exhibit A</u>.

      3.      Pursuant to that certain Deed of Trust (the "Deed of Trust"), all obligations (collectively, the "Obligations") of the Debtor under and with respect to the Note and the Deed of Trust are secured by the Property and the other collateral described in the Deed of Trust.  The lien created by the Deed of Trust was perfected by recording of the Deed of Trust in the office of the Clerk of the County of Montgomery, Maryland.  A copy of the recorded Deed of Trust is attached hereto as <u>Exhibit B</u>.

4.      As of June 10, 2015, the estimated outstanding Obligations are:

| | |
|---|---|
| Unpaid Principal Balance | $247,834.97 |
| Unpaid, Accrued Interest | $61,339.14 |
| Uncollected Late Charges | $134.06 |
| Mortgage Insurance Premiums | $94.24 |
| Taxes and Insurance Payments on behalf of Debtor | $11,547.54 |
| Other Costs | $1,460.38 |
| **Less**:  Partial Payments | ($0.00) |
| Minimum Outstanding Obligations | $322,410.33 |

5.      The foregoing Other Costs consist of the following:

| Pre-petition or Post-petition | Fee Description | Amount |
|---|---|---|
| *Pre-Petition* | *Return Payment Fee* | *$15.00* |
| *Pre-Petition* | *Property Preservation Fees* | *$1,445.38* |

6.      The following chart sets forth the number and amount of  payments due pursuant to the terms of the Note that have been missed by the Debtor as of June 10, 2015:

| Number of Missed Payments | From | To | Monthly Payment Amount | Total Amounts Delinquent |
|---|---|---|---|---|
| 8 | 02/01/2011 | 09/01/2011 | $1,780.78 | $14,246.24 |
| 13 | 10/01/2011 | 10/01/2012 | $1,820.04 | $23,660.52 |
| 11 | 11/01/2012 | 09/01/2013 | $1,688.59 | $18,574.49 |
| 12 | 10/01/2013 | 09/01/2014 | $1,675.84 | $20,110.08 |
| 2 | 10/01/2014 | 11/01/2014 | $1,675.34 | $3,350.68 |
| 6 | 12/01/2014 | 05/01/2015 | $1,683.08 | $10,098.48 |
| 1 | 06/01/2015 | 06/01/2015 | $1,671.49 | $1,671.49 |
| | | | Total Payments: | $91,711.98 |

7.      In addition to the other amounts due to Movant reflected in this Motion, as of the date hereof, in connection with seeking the relief requested in this Motion, Movant has also incurred $826.00 in legal fees and costs.

8.      The estimated market value of the Property is $180,000.00.  The basis for such valuation is: Tax Assessment, a copy of which is attached hereto as <u>Exhibit C</u>.

9.      Upon information and belief, the aggregate amount of encumbrances on the Property listed in the Schedules or otherwise known, including but not limited to the encumbrances granted to Movant, is $363,476.33.

10.      Cause exists for relief from the automatic stay for the following reasons:

    i.      Movant's interest in the Property is not adequately protected.

    ii.      Pursuant to 11 U.S.C. § 362(d)(2)(A), the Debtor has no equity in the Property; and pursuant to § 362(d)(2)(B), the Property is not necessary for an effective reorganization.

WHEREFORE, Movant prays that this Court issue an Order terminating or modifying the stay and granting the following:

1.    Relief from the stay for all purposes allowed by law, the Note, and the Deed of Trust, and applicable law, including but not limited to allowing Movant to proceed under applicable non-bankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property and any and all other collateral pledged under the Deed of Trust.

2.    That the 14-day stay described by Bankruptcy Rule 4001(a)(3) be waived.

3.    For such other relief as the Court deems proper.


Dated: June 16, 2015.

BANK OF AMERICA, N.A.

By:**/s/KIMBERLY B. LANE**
Randa S. Azzam, Esquire, Bar No. 22474
Kimberly B. Lane, Esquire, Bar No. 18513
Samuel I. White, P. C.
611 Rockville Pike, Suite 100
Rockville, MD 20852
Tel: (301) 804-3400
Fax: (301) 838-1954
Kbritt@siwpc.com


CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing Motion was served by first class mail postage prepaid or email this 16th day of June, 2015 on all necessary parties including Laura J. Margulies, Trustee, 6205 Executive Blvd., Rockville, MD 20852; Abena Y. Williams, Counsel for Debtor, 600 Jefferson Plaza, Ste. 430, Rockville, MD 20852; and Maria Angela Macapagal, Debtor, 1001 Rockville Pike, Apt 603, Rockville, MD 20852.

**/s/KIMBERLY B. LANE**
Kimberly B. Lane, Esquire
Samuel I. White, P. C.

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION**

**In re:**

**MARIA ANGELA MACAPAGAL,**

|  |  |
|---|---|
| **DEBTOR.** | **CHAPTER 7** |
|  | **CASE NO. 15-15762-TJC** |

**BANK OF AMERICA, N.A.,**

      **Movant.**

**vs.**

**MARIA ANGELA MACAPAGAL
and LAURA J. MARGULIES, TRUSTEE,**

      **Respondents.**

**NOTICE OF MOTION AND OPPORTUNITY TO OBJECT TO MOTION
FOR RELIEF FROM THE AUTOMATIC STAY AND HEARING THEREON**

    Bank of America, N.A. ("Movant"), has filed papers with the court seeking relief from the automatic stay of 11 U.S.C. §362(a) to enable it to proceed to foreclose on its Deed of Trust referencing the subject property known as 19750 Teakwood Cir Unit 56, Germantown, MD 20874-1097. Your rights may be affected. You should read these papers carefully and discuss them with your lawyer, if you have one in this bankruptcy case.  (If you do not have a lawyer, you may wish to consult one.)

    If you do not want the court to grant the motion for relief from the stay, or if you want the court to consider your views on the motion, then by **July 6, 2015**, you or your lawyer must file a written response with the Clerk of the Bankruptcy Court explaining your position and mail a copy to:

        Kimberly B. Lane
        611 Rockville Pike, Suite 100
        Rockville, MD 20852

        and

        Laura J. Margulies
        6205 Executive Boulevard
        Rockville, MD 20852

    If you mail a copy rather than deliver your response to the Clerk of the Bankruptcy Court for filing, you must mail it early enough so that the Court will receive it by the date stated above.

The hearing is scheduled for **August 10, 2015 at 10:00 am**, in the United States Bankruptcy Court for the District of Maryland, 6500 Cherrywood Lane Suite 300, Greenbelt, MD 20770, Courtroom 3-E.

IF YOU OR YOUR LAWYER DO NOT TAKE THESE STEPS BY THE DEADLINE, THE COURT MAY DECIDE THAT YOU DO NOT OPPOSE THE RELIEF SOUGHT IN THE MOTION AND MAY GRANT OR OTHERWISE DISPOSE OF THE MOTION BEFORE THE SCHEDULED HEARING DATE.

DATE SERVED: June 16, 2015

/s/KIMBERLY B. LANE
Randa S. Azzam, Esquire, Bar No. 22474
Kimberly B. Lane, Esquire, Bar No. 18513
Samuel I. White, P. C.
611 Rockville Pike, Suite 100
Rockville, MD 20852
Tel: (301) 804-3400
Fax: (301) 838-1954
Kbritt@siwpc.com

CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing Notice of Motion was served by first class mail postage prepaid or email this 16th day of June, 2015 on all necessary parties including Laura J. Margulies, Trustee, 6205 Executive Blvd., Rockville, MD 20852; Abena Y. Williams, Counsel for Debtor, 600 Jefferson Plaza, Ste. 430, Rockville, MD 20852; and Maria Angela Macapagal, Debtor, 1001 Rockville Pike, Apt 603, Rockville, MD 20852.

 /s/KIMBERLY B. LANE
Kimberly B. Lane, Esquire
Samuel I. White, P. C.

Prepared by: JAYSON NARAG

**Exhibit A**

Multistate **NOTE** ORIGINAL

FHA Case No.

DECEMBER 22, 2008
[Date]

19750 TEAKWOOD CIR UNIT 56, GERMANTOWN, MD 20874-1097
[Property Address]

**1. PARTIES**
"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means
COUNTRYWIDE BANK, FSB
and its successors and assigns.

**2. BORROWER'S PROMISE TO PAY; INTEREST**
In return for a loan received from Lender, Borrower promises to pay the principal sum of
TWO HUNDRED FIFTY FOUR THOUSAND EIGHT HUNDRED NINETY SIX and 00/100

Dollars (U.S. $254,896.00        ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date
of disbursement of the loan proceeds by Lender, at the rate of FIVE & ONE-HALF          percent (   5.500 %) per
year until the full amount of principal has been paid.

**3. PROMISE TO PAY SECURED**
Borrower's promise to pay is secured by a Mortgage, Deed of Trust or similar security instrument that is dated the same date as
this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if
Borrower defaults under this Note.

**4. MANNER OF PAYMENT**
**(A) Time**
Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on
FEBRUARY 01, 2009      . Any principal and interest remaining on the first day of JANUARY, 2039      , will be due on that
date, which is called the "Maturity Date."
**(B) Place**
Payment shall be made at
P.O. Box 660694, Dallas, TX 75266-0694
or at such place as Lender may designate in writing by notice to Borrower.
**(C) Amount**
Each monthly payment of principal and interest will be in the amount of U.S. $1,447.27         . This amount will be
part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the
order described in the Security Instrument.
**(D) Allonge to this Note for payment adjustments**
If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the
allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this
Note. [Check applicable box]

☐ Graduated Payment Allonge     ☐ Growing Equity Allonge     ☐ Other [specify]

**5. BORROWER'S RIGHT TO PREPAY**
Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of
any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the
remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial
prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those
changes.

**6. BORROWER'S FAILURE TO PAY**
**(A) Late Charge for Overdue Payments**
If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C)
of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the
amount of FOUR          percent (   4.000 %) of the overdue amount of each payment .

**(B) Default**
If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of
the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all
accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In
many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of



Represents Redacted Information

payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

(C) **Payment of Costs and Expenses**

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

## 7.    WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 8.    GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 9.    OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____ (Seal)
LUISITO ELIZES                                    -Borrower

_____ (Seal)
MARIA ANGELA MACAPAGAL                            -Borrower

_____ (Seal)
                                                  -Borrower

_____ (Seal)
                                                  -Borrower



PAY TO THE ORDER OF

WITHOUT RECOURSE
COUNTRYWIDE BANK, FSB

BY _____
Laurie Meder
LAURIE MEDER
SENIOR VICE PRESIDENT

**Exhibit B**

36716   411

Return To:
COUNTRYWIDE BANK, FSB
MS SV-79 DOCUMENT PROCESSING
P.O. Box 10423
Van Nuys, CA 91410-0423

Record and Return to:
JDM Title, LLC
1604 Spring Hill Rd. 2nd Floor
Vienna, VA 22182 (P) 703.891.2568

2/2

[Space Above This Line For Recording Data]

ELIZES
[Escrow/Closing #]

ZEFINANCE

State of Maryland

FHA Case No.

# DEED OF TRUST

THIS DEED OF TRUST ("Security Instrument") is made on   DECEMBER 22, 2008   . The Grantor is
LUISITO ELIZES, AND MARIA ANGELA MACAPAGAL

| | |
|---|---|
| HP FD SURE | 28.00 |
| RECORDING FEE | 20.00 |
| TOTAL | 40.00 |
| Rcst #005 | Rcpt # 6704B |
| LEK RC | Blk # 2545 |
| Mar 10, 2009 | 01:33 Pt |

("Borrower"). The trustee is
**MONTGOMERY** RECONTRUST COMPANY
225 WEST HILLCREST DRIVE, MSN TO-02, THOUSAND OAKS, MD 91360
("Trustee"). The beneficiary is Mortgage Electronic Registration Systems, Inc. ("MERS"), (solely as nominee for Lender,
as hereinafter defined, and Lender's successors and assigns). MERS is organized and existing under the laws of Delaware,
and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
COUNTRYWIDE BANK, FSB
("Lender") is organized and existing under the laws of THE UNITED STATES       , and has an address of
1199 North Fairfax St. Ste.500, Alexandria, VA 22314
Borrower owes Lender the principal sum of
TWO HUNDRED FIFTY FOUR THOUSAND EIGHT HUNDRED NINETY SIX and 00/100

Dollars (U.S. $ 254,896.00     ). This debt is evidenced by Borrower's note dated the same date as this Security
Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on
JANUARY 01, 2039     . This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by
the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with
interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of
Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower
irrevocably grants and conveys to the Trustee, in trust, with power of sale, the following described property located in
MONTGOMERY                                County, Maryland:
SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

MONTGOMERY COUNTY, MD

APPROVED BY _____

MAR 1 0 2009

$ 220.80   RECORDATION TAX PAID
$   n/a     TRANSFER TAX PAID

2009 MAR 10 P 1: 34
FILED
LORETTA E. KNIGHT
CLERK'S OFFICE
MONTGOMERY CO. MD.

FHA Maryland Deed of Trust with MERS — 4/96

MERS FHA Deed of Trust-MD
2004N-MD (11/07)(d/i)               Page 1 of 6                Amended 2/98

MD CIRCUIT COURT (Land Records) [MSA CE 63-36673] LEK 36716, p. 0411 Printed 08/1

610
D2 001 002

ELIZES L

Represents Redacted Information

36716 412

which has the address of
19750 TEAKWOOD CIR UNIT 56, GERMANTOWN
[Street, City]
Maryland 20874-1097 ("Property Address");
[Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:
UNIFORM COVENANTS.

1. Payment of Principal, Interest and Late Charge. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

2. Monthly Payment of Taxes, Insurance and Other Charges. Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3. Application of Payments. All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

4. Fire, Flood and Other Hazard Insurance. Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or

36716   413

postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**5.   Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6.   Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7.   Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8.   Fees.** Lender may collect fees and charges authorized by the Secretary.

**9.   Grounds for Acceleration of Debt.**

(a)   Default. Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i)   Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii)   Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b)   Sale Without Credit Approval. Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i)   All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii)   The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c)   No Waiver. If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d)   Regulations of HUD Secretary. In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e)   Mortgage Not Insured. Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof,

36716  414

Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10. Reinstatement. Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

11. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers. The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13. Notices. Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

14. Governing Law; Severability. This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

15. Borrower's Copy. Borrower shall be given one conformed copy of the Note and of this Security Instrument.

16. Hazardous Substances. Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. Assignment of Rents. To the extent permitted by applicable law, Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

3 6 7 1 6    4 1 5

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

18.  Foreclosure Procedure. If Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall mail or cause Trustee to mail a notice of sale to Borrower in the manner prescribed by applicable law. Trustee shall give notice of sale by public advertisement for the time and in the manner prescribed by applicable law. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, Trustee's fees of    5.000 % of the gross sale price and reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

Borrower, in accordance with Subtitle W of the Maryland Rules of Procedure, does hereby declare and assent to the passage of a decree to sell the Property in one or more parcels by the equity court having jurisdiction for the sale of the Property, and consents to the granting to any trustee appointed by the assent to decree of all the rights, powers and remedies granted to the Trustee in this Security Instrument together with any and all rights, powers and remedies granted by the decree. Neither the assent to decree nor the power of sale granted in this paragraph 18 shall be exhausted in the event the proceeding is dismissed before the payment in full of all sums secured by this Security Instrument.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

19.  Release. Upon payment of all sums secured by this Security Instrument, Lender or Trustee shall release this Security Instrument without charge to Borrower and mark the Note "paid" and return the Note to Borrower. Borrower shall pay any recordation costs.

20.  Substitute Trustee. Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the city or county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

21.  Possession of the Property. Borrower shall have possession of the Property until Lender has given Borrower notice of default pursuant to paragraph 18 of this Security Instrument.

22.  Riders to this Security Instrument. If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

| | | |
|---|---|---|
| [X] Condominium Rider | [ ] Growing Equity Rider | [ ] Other [specify] |
| [ ] Planned Unit Development Rider | [ ] Graduated Payment Rider | |

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_____ (Seal)
LUISITO ELIZES                                                  - Borrower

_____ (Seal)
MARIA ANGELA MACAPAGAL                      - Borrower

_____ (Seal)
                                                                    - Borrower

_____ (Seal)
                                                                    - Borrower

36716   416

## LEGAL DESCRIPTION EXHIBIT A

MO CIRCUIT COURT (Land Records) [MSA CE 63-36673] LEK 36716, p. 0416. Printed 06/16/2010. Online 03/13/2009.

36716   417   **Exhibit A**

Unit number Fifty – Six (56) in "THE WILLOW COVE CONDOMINIUM" per declaration of the Artery Organization Inc., a Maryland Corporation, dated September 1, 1988 and recorded among the Land Records of Montgomery County, Maryland on September 7, 1988 in Liber 8455, folio 100 and pursuant to the appropriate plats described in said Declaration recorded among the said Land Records in Condominium Plat Book 48 at Plats 4985 through 5015, both inclusive.   Together with the improvements thereto and the rights and appurtenants thereto belonging or appertaining and particularly the rights in common with others, in the general and limited common elements of the aforementioned Condominium and all other rights and privileges of a Condominium Unit, subject to the conditions, limitations, reservations and covenants set forth in the aforesaid Declaration.

36716   418

STATE OF MARYLAND, Montgomery _____ County ss:
I Hereby Certify, That on this _22_ day of _December_, 2008_, before me, the subscriber, a Notary Public of the State of Maryland, in and for the _Montgomery county_, personally appeared _Wilson Elizen and Theresa Toledo_
_Jose V. Vera Felicia_ _____.

known to me or satisfactorily proven to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledge that he/she/they executed the same for the purposes therein contained.
AS WITNESS: my hand and notarial seal.

My Commission Expires:

_____
Notary Public

ANGELA V. REINA
Notary Public, State of Maryland
County of Montgomery
My Commission Expires June 9, 2011

STATE OF _Maryland_, _Montgomery_ _____ County ss:
I Hereby Certify, That on this _22_ day of _December_, 2008_ before me, the subscriber, a Notary Public of the State of _Maryland_ and for the _Montgomery_ _____, personally appeared _Juan C. Jimenez_ _____

the agent of the party secured by the foregoing Deed of Trust, and made oath in due form of law that the consideration recited in said Deed of Trust is true and bona fide as therein set forth and that the actual sum of money advanced at the closing transaction by the secured party was paid over and disbursed by the party or parties secured by the Deed of Trust to the Borrower or to the person responsible for disbursement of funds in the closing transaction or their respective agent at a time not later than the execution and delivery by the Borrower of this Deed of Trust, and also made oath that he is the agent of the party or parties secured and is duly authorized to make this affidavit.
AS WITNESS: my hand and notarial seal.

My Commission Expires:

_____
Notary Public

ANGELA V. REINA
Notary Public, State of Maryland
County of Montgomery
My Commission Expires June 9, 2011

This is to certify that the within instrument was prepared
by a party to the instrument.

_____
JAYSON NARAG
Funder

36716    419

The undersigned hereby certifies that this instrument was prepared by or under the supervision of an attorney admitted to practice before the Court of Appeals of Maryland, or by or on behalf of one of the parties named herein.

Attorney Richard G. Solomon

36716    420

# CONDOMINIUM RIDER

FHA Case No.

THIS CONDOMINIUM RIDER is made this 22nd   day of DECEMBER, 2008 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note ("Note") to
COUNTRYWIDE BANK, FSB

("Lender") of the same date and covering the Property described in the Security Instrument and located at:

19750 TEAKWOOD CIR UNIT 56
GERMANTOWN, MD 20874-1097
[Property Address]

The Property includes a unit in, together with an undivided interest in the common elements of, a condominium project known as:

WILLOW COVE MANOR

[Name of Condominium Project]

("Condominium Project"). If the owners association or other entity which acts for the Condominium Project ("Owners Association") holds title to property for the benefit or use of

FHA Condominium Rider
1586U-XX (09/08)(d/i)                    Page 1 of 3                    HUD 4165.1 VIII




MO CIRCUIT COURT (Land Records) [MSA CE 63-36673] LEK 36716, p. 0420. Printed 06/16/2010. Online 03/13/2009.

3b71b   421

its members or shareholders, the Property also includes Borrower's interest in the Owners Association and the uses, proceeds and benefits of Borrower's interest.

**CONDOMINIUM COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

    A.  So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring all property subject to the condominium documents, including all improvements now existing or hereafter erected on the Property, and such policy is satisfactory to Lender and provides insurance coverage in the amounts, for the periods, and against the hazards Lender requires, including fire and other hazards included within the term "extended coverage," and loss by flood, to the extent required by the Secretary, then: (i) Lender waives the provision in Paragraph 2 of this Security Instrument for the monthly payment to Lender of one-twelfth of the yearly premium installments for hazard insurance on the Property, and (ii) Borrower's obligation under Paragraph 4 of this Security Instrument to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy. Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage and of any loss occurring from a hazard. In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the condominium unit or to the common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by this Security Instrument, with any excess paid to the entity legally entitled thereto.

    B.  Borrower promises to pay all dues and assessments imposed pursuant to the legal instruments creating and governing the Condominium Project.

    C.  If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this Paragraph C shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with

FHA Condominium Rider
1586U-XX (09/08)            Page 2 of 3            HUD-4165.1 VIII

3b71b   422

interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Condominium Rider.

_____ (Seal)
LUISITO BLIZES                                                     - Borrower

_____ (Seal)
MARIA ANGELA MACAPAGAL                               - Borrower

_____ (Seal)
                                                                              - Borrower

_____ (Seal)
                                                                              - Borrower

FHA Condominium Rider
1586U-XX (09/08)                       Page 3 of 3                       HUD 4165.1 VIII

MO CIRCUIT COURT (Land Records) [MSA CE 63-36673] LEK 36716, p. 0422. Printed 06/16/2010. Online 03/13/2009.

3б71б   423

## AFFIDAVIT MADE PURSUANT TO SECTION 12-108(G)(3)
## OF THE TAX-PROPERTY ARTICLE OF
## THE ANNOTATED CODE OF MARYLAND

The undersigned make this oath, in due form of law and under the penalties of perjury, that the following is true to the best of our knowledge, information and belief, in accordance with Section 12-108(g)(3) of the Tax-Property Article of the Annotated Code of Maryland, as follows:

1.  That we are original mortgagors of the Mortgage/Deed of Trust recorded in Liber 30752 at Folio 554 among the Land Records of Montgomery County;

2.  That the mortgaged property is our principal residence; and,

3.  That the amount of unpaid principal of the original mortgages/deeds of trust being refinanced is:

    Countrywide Home Loans Servicing LP:          **$223,394.69**

DATED this this __**22nd**__ day of _____**December**_____, __2008__.

_____
**Maria Angela Macapagal**

_____
**Luisito Elizes**

State of ~~Maryland~~, County of __Fairfax__
         *Virginia*

I HEREBY CERTIFY THAT on this 22nd day of December, 2008, before me, the subscriber, a Notary Public of the jurisdiction aforesaid, personally appeared __**Maria Angela Macapagal and Luisito Elizes**__, known to me (or satisfactorily proven) to be the persons described in the foregoing instrument and made oath in due form of law, and under the penalties of perjury, that the matters and facts set forth herein are true.

As witness, my hand and notarial seal.

_____
NOTARY PUBLIC
My Commission Expires: _____



OFFICIAL SEAL
JUAN C. ORDZ MEL
NOTARY PUBLIC VIRGINIA
COMMISSION NO. 7411888
MY COMMISSION EXPIRES. APRIL 01, 2010

MO CIRCUIT COURT (Land Records) [MSA CE 63-36673] LEK 36716, p. 0423. Printed 05/12/2015. Online 03/31/2005.
File No. MD08-1057

36716   424

## State of Maryland Land Instrument Intake Sheet

[   ] Baltimore City    [ X ] County: Montgomery

*Information provided is for the use of the Clerk's Office and State Department of Assessments and Taxation, and the County Finance Office only.*
*(Type or Print in Black Ink Only All Copies Must Be Legible)*

CLERK'S NOTATION
Document submitted for record is a condition not permitting satisfactory photographic reproduction.

**1 — Type(s) of Instruments**  ([   ] Check Box if Addendum Intake Form is Attached.)

| 1 | Deed | Mortgage | Other | | Other |
|---|------|----------|-------|---|-------|
| 2 | Deed of Trust | Lease | | | |

**2 — Conveyance Check Box**

| X | Improved Sale Arms-Length [1] | Unimproved Sale Arms-Length [2] | Multiple Arms Length [3] | Not an Arms-Length Sale [9] |
|---|---|---|---|---|

**3 — Tax Exemptions (if Applicable) Cite or Explain Authority**

| Recordation | |
|---|---|
| State Transfer | |
| County Transfer | |

**4 — Consideration and Tax Calculations**

| Consideration | Amount | | Finance Office Use Only | |
|---|---|---|---|---|
| | | | **Transfer and Recordation Tax Consideration** | |
| Purchase Price/Consideration | $ .00 | | | |
| Any New Mortgage | $ 254,896.00 | | Transfer Tax Consideration | $ |
| Balance of Existing Mortgage | $ 223,394.69 | | x ( ) % | $ |
| Other: | $ | | Less Exemption Amount | – $ |
| | | | Total Transfer Tax | = $ |
| Other: | $ | | Recordation Tax Consideration | $ |
| | | | x ( ) per $500 | = $ |
| Full Cash Value | $ 31,501.31 | | TOTAL DUE | $ |

**5 — Fees**

| Amount of Fees | Doc. 1 | Doc. 2 | Agent: |
|---|---|---|---|
| Recording Charge | $ 20.00 | $ 20.00 | |
| Surcharge | $ 20.00 | $ 20.00 | Tax Bill: |
| State Recordation Tax | $ 0.00 | $ 220.80 | |
| State Transfer Tax | $ 0.00 | $ 0.00 | C.B. Credit: |
| County Transfer Tax | $ 0.00 | $ 0.00 | |
| Other | $ | $ | Ag. Tax/Other: |
| Other | $ | $ | |

**6 — Description of Property**

SDAT requires submission of all applicable information. A maximum of 40 characters will be indexed in accordance with the priority cited in Real Property Article Section 3-104(g)(3)(i).

| District | | Map | Parcel No. | Var. LOG |
|---|---|---|---|---|
| | | | | [   ] (5) |
| Subdivision Name | Lot (3a) | Block(3b) | Sect/AR(3c) | Plat Ref. | SqFt/Acreage(4) |

Location/Address of Property Being Conveyed (2)
19750 Teakwood Circle, Unit 56, Germantown, MD 20874

| Other Property Identifiers (if applicable) | Water Meter Account No. |
|---|---|

| Residential [ X ] or Non-Residential [   ] | Fee Simple [ X ] or Ground Rent [   ] | Amount: $N/A |
|---|---|---|
| Partial Conveyance? [   ] Yes [ X ] No | Description/Amt. of SqFt/Acreage Transferred: | N/A |

If Partial Conveyance, List Improvements Conveyed: N/A

**7 — Transferred From**

| Doc. 1 – Grantor(s) Name(s) | Doc. 2 – Grantor(s) Name(s) |
|---|---|
| Mortgage Electronic Systems, Inc | Mari Maria Angela Macapagal |
| | Luisito Elizes |
| Doc. 1 – Owner(s) of Record, if Different from Grantor(s) | Doc. 2 – Owner(s) of Record, if Different from Grantor(s) |

**8 — Transferred To**

| Doc. 1 – Grantee(s) Name(s) | Doc. 2 – Grantee(s) Name(s) |
|---|---|
| Countrywide Home Loans | RECON Trust Company |
| New Owner's (Grantee) Mailing Address | |
| 19750 Teakwood Circle, Unit 56, Germantown, MD 20874 | |

**9 — Other Names to Be Indexed**

| Doc. 1 – Additional Names to be Indexed (Optional) | Doc. 2 – Additional Names to be Indexed (Optional) |
|---|---|
| | Countrywide Bank FSB |

**10 — Contact/Mail Information**

| Instrument Submitted By or Contact Person | [ X ] Return to Contact Person |
|---|---|
| Name: Angela Reina | |
| Firm: JDM Title, LLC | [   ] Hold for Pickup |
| Address: 1604 Springhill Road, 2nd Floor, Vienna, VA 22182 | |
| Phone: Telephone 703-891-2568 Fax: 703-891-5064 | [   ] Return Address Provided |

**11** IMPORTANT: *BOTH* THE ORIGINAL DEED *AND* A PHOTOCOPY MUST ACCOMPANY EACH TRANSFER

| Assessment Information | [X] Yes [   ] No | Will the property being conveyed be the grantee's principal residence? |
|---|---|---|
| | [   ] Yes [ X ] No | Does transfer include personal property? If yes, identify: |
| | [ X ] Yes [   ] No | Was property surveyed? If yes, attach copy of survey (if recorded, no copy required) |

**Assessment Use Only - Do Not Write Below This Line**

[   ] Terminal Verification  [   ] Agricultural Verification  [   ] Whole  [   ] Part  [   ] Tran. Process Verification

| Transfer Number: | Date Received: | Deed Reference: | Assigned Property No.: | |
|---|---|---|---|---|
| Year | | Geo. | Map | Sub | Block |
| Land | | Zoning | Grid | Plat | Lot |
| Buildings | | Use | Parcel | Section | Occ. Cd. |
| Total | | Town Cd. | Ex. St. | Ex. Cd. | |
| REMARKS: | | | | |

42317   46

FILED
LORETTA E KNIGHT
CLERK'S OFFICE
MONTGOMERY CO. MD.
2011 OCT -5 A 11: 52

Recording Requested By:
**Bank of America**
Prepared By: Youda Crain
**888-603-9011**
When recorded mail to:
CoreLogic
450 E. Boundary St.
Attn: Release Dept.
Chapin, SC 29036

Property Address:
**19750 Tenkwood Cir Unit 56**
Germantown, MD 20874-1097

This space for Recorder's use

## ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned holder of a Deed of Trust (herein "Assignor") whose address is 3300 S.W. 34th Avenue, Suite 101 Ocala, FL 34474 does hereby grant, sell, assign, transfer and convey unto **BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING, LP** whose address is 451 7TH ST.SW #B-133, **WASHINGTON DC 20410** all beneficial interest under that certain Deed of Trust described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Deed of Trust.

Original Lender:     **COUNTRYWIDE BANK, FSB**
Made By:             **LUISITO ELIZES, AND MARIA ANGELA MACAPAGAL**
Original Trustee:    **\*\*MONTGOMERY\*\*RECONTRUST COMPANY**
Date of Deed of Trust: 12/22/2008      Original Loan Amount: $254,896.00

Recorded in Montgomery County, MD on: 3/10/2009, book 36716, page 411 and instrument number N/A

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Deed of Trust to be executed on
**9/27/2011**

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC.

By: *Aaron Hawkes*
**Aaron Hawkes, As sistant Secretary**

State of **California**
County of **Ventura**

On **9-27-11** _____ before me, *Iris Villatoro* _____, Notary Public, personally appeared **Aaron Hawkes**
, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity (ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

**I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.**

WITNESS my hand and official seal.

Notary Public: _____          (Seal)
My Commission Expires: _____

IRIS VILLATORO
Commission # 1823281
Notary Public - California
Los Angeles County
My Comm. Expires Nov 18, 2012

IMP FD SURE            40.00
RECORDING FEE          20.00
TOTAL                  60.00
Rcc# M005   Rcpt # 41122
LEK    CA    Blk # 754
Oct 05, 2011       11:38 am

ELIZES            L

610            D8   001   003


20
40
CA

Represents Redacted Information



Exhibit C

---

Real Property Data Search ( w3)                                    Guide to searching the database

---

**Search Result for MONTGOMERY COUNTY**

---

| View Map | View GroundRent Redemption | View GroundRent Registration |
| --- | --- | --- |

Account Identifier:        **District - 02 Account Number -** ▮▮▮▮▮

### Owner Information

| Owner Name: | MACAPAGAL MARIA A ET AL | Use: Principal Residence: | RESIDENTIAL CONDOMINIUM YES |
| --- | --- | --- | --- |
| Mailing Address: | 19750 TEAKWOOD CIR # 56 GERMANTOWN MD 20874-1097 | Deed Reference: | /30752/ 00547 |

### Location & Structure Information

| Premises Address: | 19750 TEAKWOOD CIR GERMANTOWN 20874-1097 CONDO UNIT: 56 | Legal Description: | UN 56 WILLOW COVE MANOR SEC 5 |
| --- | --- | --- | --- |

| Map: | Grid: | Parcel: | Sub District: | Subdivision: | Section: | Block: | Lot: | Assessment Year: | Plat No: |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| ▮▮ | ▮▮ | ▮▮ | | 0016 | | 8 | | 2014 | Plat Ref: |

| Special Tax Areas: | | Town: | NONE |
| --- | --- | --- | --- |
| | | Ad Valorem: | |
| | | Tax Class: | 42 |

| Primary Structure Built | Above Grade Enclosed Area | Finished Basement Area | Property Land Area | County Use |
| --- | --- | --- | --- | --- |
| 1988 | 1,374 SF | | | 118 |

| Stories | Basement | Type | Exterior | Full/Half Bath | Garage | Last Major Renovation |
| --- | --- | --- | --- | --- | --- | --- |
| | | CONDO TH | | | | |

### Value Information

| | Base Value | Value As of 01/01/2014 | Phase-in Assessments As of 07/01/2014 | As of 07/01/2015 |
| --- | --- | --- | --- | --- |
| Land: | 54,000 | 54,000 | | |
| Improvements | 126,000 | 126,000 | | |
| Total: | 180,000 | 180,000 | 180,000 | 180,000 |
| Preferential Land: | 0 | 0 | | 0 |

### Transfer Information

| Seller: VINAK, DEV R & VEENA Type: ARMS LENGTH IMPROVED | Date: 09/13/2005 Deed1: /30752/ 00547 | Price: $280,000 Deed2: |
| --- | --- | --- |
| Seller: ESHELMAN, SCOTT Type: ARMS LENGTH IMPROVED | Date: 08/14/2002 Deed1: /21619/ 00053 | Price: $135,000 Deed2: |
| Seller: ESHELMAN, LINDA Type: ARMS LENGTH IMPROVED | Date: 05/08/2000 Deed1: /18064/ 00679 | Price: $82,000 Deed2: |

### Exemption Information

| Partial Exempt Assessments: | Class | 07/01/2014 | 07/01/2015 |
| --- | --- | --- | --- |
| County: | 000 | 0.00 | |
| State: | 000 | 0.00 | |
| Municipal: | 000 | 0.00|0.00 | 0.00|0.00 |

Tax Exempt:                        Special Tax Recapture:
Exempt Class:                        NONE

### Homestead Application Information

Homestead Application Status: Approved   10/24/2008

---

Represents Redacted Information